**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------)
WHAT DO YOU MEME, LLC                              )
                                                                           )   Civil Action No. 25-cv-7783
                        Plaintiff,                               )
        v.                                                           )
                                                                           )
THE 1525 CORP., SHUFFLE PRESENTS LLC;  )
JASON SIZER; and ZAENA CHERIF;            )
                                                                           )
                        Defendants.                         )
---------------------------------------------------------------)

**COMPLAINT**

Plaintiff What Do You Meme LLC dba Relatable ("Relatable" or "Plaintiff"), by and through its attorneys, hereby files this Complaint ("Complaint") against Defendants The 1525 Corp. ("1525 Corp"), Shuffle Presents LLC ("Shuffle"), Jason Sizer ("Mr. Sizer") and Zaena Cherif (collectively, "Defendants") and states as follows:

**INTRODUCTION**

1. This is an action for Copyright Infringement, 17 U.S.C. § 101, et seq., for Trademark Counterfeiting and Infringement pursuant to the Lanham Act §32(1), 15 U.S.C. §1114(1)(a), for False Designation of Origin, False Advertising, and Unfair Competition arising under the Lanham Act §43(a), 15 U.S.C. §1125 and for common law trademark infringement, and fraudulent inducement and unjust enrichment under the laws of the State of New York.

**PARTIES**

2. Plaintiff Relatable is a limited liability company, located at 233 Spring Street, 5th Floor West, New York, New York 10013.

3. Upon information and belief, Defendant The 1525 Corp is a Delaware corporation, with a registered address of 262 Chapman Road, Suite 240, Newark, Delaware 19702, and which offers and provides certain services throughout the United States, including in this District.

4. Upon information and belief, Defendant Shuffle is an Illinois limited liability company, with an address of 1860 W. 93RD Street, Chicago, Illinois 60643, and which offers and provides certain services throughout the United States, including in this District.

5. Upon information and belief, Mr. Sizer and Ms. Cherif are citizens of the state of Illinois, and are the principals/owners of 1525 Corp and Shuffle. Upon information and belief, Mr. Sizer and Ms. Cherif exercise control over 1525 Corp and Shuffle, including with respect to the activities alleged herein, and indeed that Mr. Sizer and Ms. Cherif operate 1525 Corp and Shuffle as mere shells or conduits to conduct their own personal and/or business activities.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction pursuant to 28 U.S.C. §§1331 and 1338 as it involves claims presenting federal questions under 15 U.S.C. §1121(a) (actions arising under the Lanham Act have original jurisdiction in federal courts), and 15 U.S.C. §§1114, §1125 and 17 U.S.C. 101. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367(a), because such claims are so related to those claims under which the Court has jurisdiction that they form part of the same case and controversy under Article III of the United States Constitution.

7. This Court has personal jurisdiction over Defendants because they regularly transact, do, and solicit business in this judicial district, including by offering services in this district and/or because Defendants have committed tortious acts within this jurisdiction and has

2

caused injury to Plaintiff in this district as alleged further herein and because Defendants solicited Plaintiff's business in this district, entered into an agreement with Plaintiff in this district, and such solicitation and the services rendered under the agreement are the subject of this lawsuit.

8. Venue is proper in this District pursuant to 28 USC §1391(b) because a substantial part of the events giving rise to the claims in this action occurred in this District and Plaintiff resides in this District.

**FACTUAL BACKGROUND**

9. Founded in 2016 in New York City, Relatable is an entertainment consumer product company driven by the digital age and inspired by pop culture. Plaintiff's business focuses on products that customers can relate to — things that make people feel good, get them to hang out together, and just have a good time.

10. Relatable has a portfolio that features over 150 unique products, including a wide array of adult party games as well as family-friendly games, kids' games, outdoor games, plush toys, and more.

11. Relatable's oldest and best-selling product is its line of WHAT DO YOU MEME? card games (the "Games"). Relatable has sold tens of millions of units the Games, generating hundreds of millions of dollars of revenue for the company. Relatable owns all right, title and interest in and to the Games, including with respect to all copyright rights relating to the Games, as well as to the WHAT DO YOU MEME? trademark.

12. Through significant investment in marketing its Games, including spending millions of dollars in marketing and advertising, Plaintiff has obtained wide public recognition and goodwill for these brands.

13. Plaintiff's online and social media marketing efforts for its Games has reached an incredibly broad audience with hundreds of millions of consumer impressions creating secondary meaning that identifies Plaintiff as the source of these products.

14. In addition to its extensive common law rights, Plaintiff is also the owner of US Registration Nos. 5,272,188 and 6,608,602 for the WHAT DO YOU MEME? mark for various toys and games in International Class 028. Copies of Plaintiff's Registration Certificates are attached as Exhibit A.

15. Plaintiff's registrations are prima facie evidence of: (a) the validity of the registered mark; (b) the validity of the registration of the mark; (c) Plaintiff's ownership of the mark; (d) Plaintiff's exclusive right to use the registered mark; (e) the fact that the mark is inherently distinctive; and (f) that the mark is not a generic name.

16. Plaintiff is the copyright owner of all copyright rights in the Games, including with respect to its "Recently Refreshed" and "Bigger Better" editions of the Games (the "Copyrighted Works").

17. The Copyrighted Works are wholly original, and Plaintiff is the exclusive owner of all right, title, and interest, including all rights under copyright, in the Copyrighted Works.

18. Plaintiff is the owner of valid and subsisting United States Copyright Registration Nos. VA 2-108-563, VA 2-132-180, VA 2-326-761, and TX 9-478-926 for the Copyrighted Works, issued by the United States Copyright Office. Attached as Exhibit B are true and correct copy of the registration certificates for the Copyrighted Works.

19. On or about May 31st, 2024, Mr. Sizer, on behalf of Shuffle, reached out to Relatable to pitch Shuffle's social media advertising and marketing services. To induce Relatable

into retaining Shuffle, Mr. Sizer and Shuffle made numerous false representations that led Relatable to believe that Shuffle was a legitimate, experienced marketing agency.

20. Relatable signed an agreement (the "Agreement") with Shuffle on July 24th, 2024 for social media content creation, account management, and account strategy. The Agreement provided for a term of up to six months, at a monthly rate of $30,000. At the time the contract was signed, Mr. Sizer issued six invoices to Relatable for each month of service under the Agreement.

21. Mr. Sizer and Ms. Cherif, each of whom are, on information and belief, principles of Shuffle, rendered services to Relatable under the Agreement.

22. Shuffle's services were not as advertised, failing to meet basic quality standards, with deliverables that consistently underperformed and did not meet the scope or expectations outlined in the Agreement.

23. On or about November 5, 2024, Relatable provided Shuffle with notice to terminate the Agreement, in accordance with the terms of the Agreement. At the time that this notice was given, Relatable had paid Shuffle $120,000, and approximately three-months of services had been performed under the Agreement. Shuffle provided no additional services after November 5, 2024. In the interests of remaining amicable, Relatable did not demand any refunds for Shuffle's poor performance in the first three months of the Agreement, or for a pro-rated return of the fourth payment made to Shuffle, as virtually no services had been rendered with respect to that payment.

24. Due to an internal accounting department error, Relatable had mistakenly paid Shuffle the final two $30,000 monthly payments in December 2024 and January 2025, respectively, despite the contract having been terminated and no services being rendered with respect to those payments.

25. Relatable became aware of the overpayments during a regular review of its marketing expenditures in April 2025. Relatable reached out to Mr. Sizer on no less than seven occasions to request a refund of this overpayment. Mr. Sizer failed to respond to any of these messages.

26. In June 2025, Relatable became aware that Mr. Sizer and Ms. Cherif were no longer operating their business under the banner of Shuffle, but rather through 1525 Corp. On information and belief, both Shuffle and 1525 Corp are front companies, through which Mr. Sizer and Ms. Cherif conduct their own personal and business endeavors.

27. Mr. Sizer and Ms. Cherif exercised complete domination of Shuffle in respect to the agreement with, and services provided to, Relatable and that such domination was used to commit a fraud or wrong against Relatable which resulted in Relatable's injury.

28. On the website for 1525 Corp, under the heading "We Did This", 1525 Corp lists Relatable as a brand it has partnered with. In this alleged testimonial, 1525 Corp claims that "[o]ur team created a hashtag challenge and influencer integration campaign designed to generate user participation. We created an original sound and leveraged the audiences of dozens of notable influencers to maximize our reach. The campaign was a complete success!" In connection with this claim, 1525 Corp prominently displays the WHAT DO YOU MEME? trademark as well as the Copyrighted Works on its website. An internet printout of Defendant's website featuring Relatable trademark and the Copyrighted Works is enclosed as Exhibit C.

29. Relatable has never contracted with 1525 Corp.

30. Defendant copied the Copyrighted Works without Plaintiff's authorization, consent, or knowledge, and without any remuneration to Plaintiff.

31. Defendant did not seek, and pay, for a license to use the Copyrighted Works.

6

32. Defendant exploited the Copyrighted Works to promote its own services and increase its own sales, thereby securing a financial windfall for the unauthorized use of Plaintiff's property and rights.

33. As a result of Defendant's actions described above, Plaintiff has been directly damaged, and is continuing to be damaged, by the unauthorized reproduction, distribution, and public display of the Copyrighted Works. Defendant has never accounted to, or otherwise paid, Plaintiff for its use of the Copyrighted Works.

34. Defendant's acts are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to Plaintiff for which Plaintiff has no adequate remedy at law.

35. Defendants have used the WHAT DO YOU MEME? trademark on their website to promote their business and to solicit new clients and sponsors.

36. Defendants' unauthorized use of the WHAT DO YOU MEME? trademark is likely to cause, and has already caused, confusion among the relevant public that Defendants are affiliated with, approved by or sponsored by Relatable. Defendants' conduct has caused irreparable harm to Relatable in violation of the Lanham Act, 15 U.S.C. § 1114(1).

37. Defendants' trademark infringement has damaged Relatable, and unless enjoined, will continue to irreparably damage the reputation and goodwill associated with the WHAT DO YOU MEME? Trademark.

38. Plaintiff's use and rights in its WHAT DO YOU MEME? trademark predate any trademark rights that Defendants can claim in this mark.

39. Defendant's use of Plaintiff's WHAT DO YOU MEME? registered mark to promote its own services is without the approval or authorization of Plaintiff.

40. Defendant's continued infringing activity is willful.

## COUNT I
## FRAUDULENT INDUCEMENT

41. Relatable incorporates and realleges the preceding paragraphs of this Complaint as if fully set forth herein.

42. Shuffle and Mr. Sizer made false statements of material fact relating to Defendant's qualifications, experience, and abilities in order to induce Relatable to enter into the Agreement. These statements were false and known to be false at the time that they were made. These statements were made with the intent of inducing Relatable to enter into the Agreement.

43. Upon information and belief, Defendants Mr. Sizer and Ms. Cherif knew of and approved the false representations made to Relatable by Mr. Sizer on behalf of Shuffle in order to benefit from the Agreement and funds provided by Relatable.

44. Relatable relied on the statements made by Shuffle and Mr. Sizer and were induced into signing the Agreement and paying $180,000 to Shuffle. Had Relatable known the truth regarding Defendant's qualifications, experience, and abilities, it never would have entered into the Agreement.

45. Relatable seeks a rescission of the Agreement and return of the funds it was fraudulently induced to pay to Defendants. Relatable also seeks additional compensatory damages in an amount to be proven at trial.

## COUNT II
## Unjust Enrichment

46. Relatable incorporates and realleges the preceding paragraphs of this Complaint as if fully set forth herein.

47. Relatable terminated the Agreement with Shuffle on or about November 5, 2024.

48. Shuffle did not challenge Relatable's termination of the Agreement, and indeed provided no additional services after November 5, 2024.

49. Despite the fact that the Agreement was terminated and no services were rendered during the final two months of the Agreement, Defendants accepted the funds that were mistakenly wired to them by Relatable for those two months, and when confronted about the overpayment, refused to provide Relatable with any refunds or otherwise return the ill-gotten funds.

50. Allowing Defendants to retain these funds despite Relatable having terminated the Agreement in accordance with the terms of the Agreement, and without Defendant providing any goods or services in connection with this payment, would be contrary to principles of equity and good conscience.

51. Relatable seeks an order compelling Defendants to return these funds mistakenly paid to Defendants. Relatable also seeks additional compensatory damages in an amount to be proven at trial.

## COUNT III
## TRADEMARK INFRINGEMENT 15 U.S.C. § 1114(1)

52. Plaintiff restates and re-avers each and every allegation contained in the foregoing paragraphs, and the acts of Defendant asserted therein, as if fully recited in this paragraph.

53. This claim is for trademark infringement against the Defendant for their advertising and promotion of their services using Plaintiff's WHAT DO YOU MEME? trademark.

54. Without the consent or authorization of Plaintiff, Defendants have advertised and used Plaintiff's WHAT DO YOU MEME? trademark in a manner such that consumers will believe that Defendant's services are sponsored, endorsed by, or affiliated with Plaintiff.

55. Defendants are using the WHAT DO YOU MEME? trademark without Plaintiff's consent or authorization, in a way which damages the Plaintiff and is likely to cause confusion, mistake, and deception as to the source or origin of the services offered by Defendants, giving the impression that the services offered by Defendant are authorized or offered by, or affiliated with the Plaintiff, when in fact they are not.

56. Defendant's actions constitute infringement of Plaintiff's registered mark in violation of Plaintiff's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

57. Defendants are willfully infringing Plaintiff's WHAT DO YOU MEME? trademark.

58. Plaintiff is damaged as a result of Defendants' activities.

59. Defendants' activities, as aforesaid, are in violation of 15 U.S.C. §1114.

## COUNT IV
## COMMON LAW TRADEMARK INFRINGEMENT

60. Plaintiff restates and re-avers each and every allegation contained in the foregoing paragraphs, inclusive, and the acts of Defendant asserted therein, as if fully recited in this paragraph.

61. This count is for common law trademark infringement of Plaintiff's trademark rights in Plaintiff's WHAT DO YOU MEME? trademark, under the laws of the State of New York.

62. The Plaintiff has used, and has acquired considerable goodwill and distinctiveness, with regard to its WHAT DO YOU MEME? registered mark. The mark has been advertised and promoted and otherwise used in commerce, since at least as early as a date preceding any rights Defendants could claim in these marks.

63. Plaintiff has extensively used its WHAT DO YOU MEME? mark in commerce and has acquired a considerable and valuable goodwill for its mark. Relevant segments of the public have come to associate Plaintiff's WHAT DO YOU MEME? mark with Plaintiff and Plaintiff's goods.

64. Defendants' use of the WHAT DO YOU MEME? trademark as alleged above, is highly damaging to the Plaintiff and its mark.

65. Defendants' use of the WHAT DO YOU MEME trademark as alleged above irreparably damages the Plaintiff and is likely to cause confusion, mistake and deception as to the source or origin of the services sold and offered for sale by Defendants.

66. Defendants' infringement is willful.

67. Defendant's actions as aforesaid, damage and threaten to further damage the value of the Plaintiff's WHAT DO YOU MEME? trademark and the goodwill associated with the same.

## COUNT V
## FALSE DESIGNATION OF ORIGIN AND
## FALSE ADVERTISING UNDER THE LANHAM ACT
## 15 U.S.C. § 1125

68. Plaintiff restates and re-avers each and every allegation contained in the foregoing paragraphs, inclusive, and the acts of Defendant asserted therein, as if fully recited in this paragraph.

69. This count arises under 15 U.S.C. §1125(a).

70. Defendants have used the WHAT DO YOU MEME? trademark in a manner which is likely to cause confusion, mistake, or deception as to the origin of Defendants' services.

71. Consumers will believe that Defendants' services are associated with, sponsored, and/or endorsed by the Plaintiff, when in fact they are not.

72. As a result of Defendants' actions, Plaintiff's reputation has thus been and will continue to be subject to the perils and hazards which arise from Defendant's tortious activities, resulting in grave irreparable harm to Plaintiff and the consuming public.

73. Plaintiff has no control over the acts of Defendants, nor any responsibility for the acts of Defendants.

74. Defendant's acts create and further the likelihood that the public will be confused as to sponsorship, source, affiliation or association of the services of Defendant.

75. Defendant's use and/or association with Plaintiff's WHAT DO YOU MEME? mark constitutes a false designation of origin, as consumers are likely to associate Plaintiff's mark with Defendant.

76. Defendant's acts under this Count are willful.

## COUNT VI
## UNFAIR COMPETITION UNDER THE LANHAM ACT
## 15 U.S.C. § 1125

77. Plaintiff restates and re-avers each and every allegation contained in the foregoing paragraphs, and the acts of Defendant asserted therein, as if fully recited in this paragraph.

78. This count is for Unfair Competition in violation of 15 USC §1125(a).

79. Defendant's use of the Plaintiff's WHAT DO YOU MEME? mark without Plaintiff's consent is likely to cause confusion among consumers.

80. Defendants' use of Plaintiff's WHAT DO YOU MEME? mark unfairly capitalizes on the goodwill associated with the Plaintiff's mark that Plaintiff has built through significant cost and effort.

81. By using Plaintiff's WHAT DO YOU MEME? mark in this manner, Defendant is unfairly competing with Plaintiff by conducting business on the goodwill built by Plaintiff.

82. Plaintiff is harmed by Defendant's activities.

83. Defendant's acts under this Count are willful.

84. Defendant's acts constitute unfair competition.

## COUNT VII
## FEDERAL COPYRIGHT INFRINGEMENT
## 17 U.S.C. § 501

85. Plaintiff restates and re-avers each and every allegation contained in the foregoing paragraphs, and the acts of Defendant asserted therein, as if fully recited in this paragraph.

86. The Copyrighted Works are original works of visual art containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. § 101, et. seq.

87. Plaintiff is the exclusive owner of rights under copyright in and to the Copyrighted Works.

88. Plaintiff owns valid copyright registrations for the Copyrighted Works, attached as Exhibit B.

89. Through Defendant's conduct alleged herein, including Defendant's reproduction, distribution and public display of the Copyrighted Works, without Plaintiff's permission, Defendant has directly infringed Plaintiff's exclusive rights in the Copyrighted Work in violation of Section 501 of the Copyright Act, 17 U.S.C. § 501.

90. On information and belief, Defendant's infringing conduct alleged herein was and continues to be willful and with full knowledge of Plaintiff's rights in the Copyrighted Works, and has enabled Defendant illegally to obtain profit therefrom.

91. As a direct and proximate result of Defendant's infringing conduct alleged herein, Plaintiff has been harmed and is entitled to damages in an amount to be proven at trial. Pursuant to 17 U.S.C. § 504(b), Plaintiff is also entitled to recovery of Defendant's profits attributable to Defendant's infringing conduct alleged herein.

92. Alternatively, Plaintiff is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 for each of the no less than four Copyrighted Works that were infringed by Defendant and for such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

93. Plaintiff further is entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

94. As a direct and proximate result of the Defendant's infringing conduct alleged herein, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.

95. On information and belief, unless Defendant's infringing conduct is enjoined by this Court, Defendant will continue to infringe the Copyrighted Works. Plaintiff therefore is entitled to permanent injunctive relief restraining and enjoining Defendant's ongoing infringing conduct.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rules of Civil Procedure 38, Plaintiff hereby demands a trial by a Jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays:

1.THAT the Agreement be rescinded and that Defendants, jointly and severally, be ordered to repay Plaintiffs the $180,000 paid to Defendants by Plaintiff in relation to the Agreement, or, alternatively, that Defendants repay Plaintiff the $60,000 in overpayments paid to Defendants by Plaintiff with respect to the Agreement.

2.THAT pursuant to 15 USC §1116 and the equity jurisdiction of this court, Defendants and their officers, agents, employees, representatives, and all persons in privity therewith be permanently enjoined and restrained from using on or in connection with the importation, sale, offering for sale, distribution, exhibition, display, or advertising of its goods or services under the WHAT DO YOU MEME? trademark, or any other marks or symbols that are confusingly or deceptively similar to, or colorably imitative of Plaintiff's WHAT DO YOU MEME? trademark.

3.THAT pursuant to 15 USC §1117, Defendants be directed to pay over to Plaintiff, any and all damages which it has sustained by consequence of Defendant's statutory and Common Law Trademark Infringement, False Designation of Origin, False Advertising, and Unfair Competition as enumerated herein.

4.THAT the Court, on all claims for relief, grant an award of compensatory, consequential, statutory, and punitive damages to Plaintiff in an amount to be determined at trial.

5.THAT the conduct of Defendants complained of herein be declared willful and as a result the amounts of actual damages be trebled as provided for in 15 U.S.C. §1117.

6.THAT pursuant to 15 U.S.C. §1117, Defendants be required to pay to Plaintiff the costs of this action, including its attorneys' fees and disbursements incurred.

7. THAT pursuant to 15 U.S.C. §1117, Defendant be directed to pay over to Plaintiff all of Defendant's profits, and any and all damages sustained by Plaintiff, plus the costs of the action.

8. THAT pursuant to 15 U.S.C. §1117, Defendant be directed to provide Plaintiff an accounting of all profits that they have obtained by consequence of Defendant's statutory and Common Law Trademark Infringement and Counterfeiting, and Unfair Competition, False Advertising and False Designation of Origin as enumerated herein.

9. THAT because of the willful nature of the infringement, the amounts of actual damages be trebled as provided for in 15 U.S.C. §1117(b).

10. For an award of statutory damages pursuant to 15 U.S.C. § 1117(c).

11. THAT Defendant be required to file with this Court and serve on Plaintiff a report in writing and under oath setting forth in detail the manner and form in which the Defendant has complied with the terms of the permanent injunction.

12. That judgment be entered against Defendant and finding Defendant has knowingly and willfully violated Section 501 of the Copyright Act (17 U.S.C. § 501).

13. That judgment be entered against defendant granting an injunction permanently enjoining the Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise, from:

    a. manufacturing, distributing, marketing, advertising, promoting, displaying, or selling or authorizing any third party to manufacture, distribute, market, advertise, promote, display, or sell the Copyrighted Works and any services,

  advertisements, products, works, or other materials that include, copy, are derived from, or otherwise embody the Copyrighted Works;

 b. reproducing, distributing, or publicly displaying the Copyrighted Works, creating any derivative works based on the Copyrighted Works, or engaging in any activity that infringes Plaintiff's rights in its Copyrighted Works; and

 c. aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) or (b).

14. That Defendant be ordered to provide an accounting of Defendant's profits attributable to Defendant's infringing conduct.

15. That Defendant be ordered to destroy or deliver up for destruction all materials in Defendant's possession, custody, or control used by Defendant in connection with Defendant's infringing conduct.

16. That Defendant, at its own expense, be ordered to remove the Copyrighted Works from any websites or other media in which it has published the Copyrighted Works.

17. Awarding Plaintiff:

 a. Defendant's profits obtained as a result of Defendant's infringing conduct, including but not limited to all profits from sales and other exploitation of the Copyrighted Works, or in the Court's discretion, such amount as the Court finds to be just and proper;

 b. damages sustained by Plaintiff as a result of Defendant's infringing conduct, in an amount to be proven at trial;

 c. should Plaintiff so elect, statutory damages pursuant to 17 U.S.C. § 504(c) instead of actual damages or profits;

    d. Any enhancements of such damages permitted under law; and

    e. Plaintiff's reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505 or any other statute or law.

18. For a judgment awarding Plaintiff interest, including pre-judgment and post-judgment interest, on the foregoing sums.

19. THAT Plaintiff be granted such other and further relief as this court deems just and equitable.

                              Respectfully Submitted,

                     By:    s/ Jeffrey A. Lindenbaum
                              Jeffrey A. Lindenbaum (JL-1971)
                              Jess M. Collen (JC-2875)
                              ROTHWELL, FIGG, ERNST & MANBECK, P.C.
                              3 Manhattanville Road
                              Purchase, New York 10577
                              Tel. (914) 941-5668
                              Fax. (914) 941-6091
                              jlindenbaum@rothwellfigg.com
                              *Attorneys for Plaintiff*

September 19, 2025